IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

Robert E. Rack, as Special Administrator
for the Estate of Lois M. Rack, deceased,
and on behalf of the wrongful death beneficiaries of
Lois M. Rack

                                                                    PLAINTIFF

vs.                              CASE NO. 4:20-cv-135-BRW

Joseph Schwartz; Rosie Schwartz;
CIBC Bank USA; Woodland Hills
HC Property Holdings, LLC; and
John Doe 1 through 5, Unknown Defendants,

                                                                    DEFENDANTS

## AMENDED COMPLAINT

Comes now Plaintiff Robert E. Rack, as Special Administrator for the Estate of Lois

M. Rack, deceased, and on behalf of the wrongful death beneficiaries of Lois M. Rack,

and for his Amended Complaint against Defendants, Joseph Schwartz; Rosie Schwartz;

CIBC Bank USA; Woodland Hills HC Property Holdings, LLC; and unknown John Doe

Defendants 1 through 5, states as follows.[1]

1.      Each of the Defendants named herein played an integral and independent

role that, collectively, served to illegitimately divert, loot, pillage, plunder, and/or strip

resources required to provide necessary care and services from the skilled nursing facility

known as Hillview Post Acute and Rehabilitation Center (the "Facility"), located at 8701

Riley Drive, Little Rock, Pulaski County, Arkansas 72205. Lois M. Rack became a

---

[1] Each of the allegations contained in this Complaint is based on an investigation of the relevant facts or on information and belief.

resident of the Facility's physical location on November 22, 2017

2.     This Complaint brings suit for the Defendants' acts, omissions, neglect and injurious conduct committed at, or in relation to, the Facility during the period of November 22, 2017 through and including January 30, 2018, and the after effects thereof.

### DEFENDANTS' OWNERSHIP AND CONTROL OF THE FACILITY

3.     On April 1, 2016, Defendants Joseph Schwartz and Rosie Schwartz (the "Schwartz Defendants") purchased a group of skilled nursing facilities—including the Facility—in Arkansas utilizing shell companies. At this time, the rampant quality of care and financial issues plaguing the Skyline Enterprise (defined *infra*) and the Schwartz Defendants were already well-documented (as described below). And these issues only grew worse as time went on.[2]

4.     Non-parties, Skyline Health Care, LLC, a/k/a, Skyline Healthcare, LLC; Highlands of Little Rock Riley Holdings, LLC, d/b/a Hillview Post Acute and Rehabilitation Center; Skyline Highland Holdings, LLC; JS Highland Holdings, LLC; Skyline Arkansas Healthcare, LLC; Skyline Arkansas Holdings, LLC; Skyline Services Group, LLC; Skyline Management Group, LLC; Skyline Central Billing Office, LLC; Hilltop Healthcare, LLC; 8701 Riley Holdings, LLC; Little Ark Investments, LLC; and Little Ark Realty Holdings, LLC (collectively, the "Skyline Enterprise"), were just some of the shell limited liability companies that made up the formerly-nationwide Skyline nursing home enterprise.

---

[2] Whenever the term "Defendants" is utilized within this Complaint, such term collectively refers to, and includes, all named Defendants in this action, including the unknown John Doe Defendants. Whenever the term "CIBC" is utilized within this Complaint, such term refers to Defendant CIBC Bank USA f/k/a The PrivateBank and Trust Company. Whenever the term "Conspiring Defendants" is utilized within this Complaint, such term collectively refers to, and includes, Defendants CIBC and Woodland Hills HC Property Holdings, LLC. Whenever the term "Facility" is used in within this Complaint such term refers to Hillview Post Acute and Rehabilitation Center, a nursing home located at 8701 Riley Drive, Little Rock, Pulaski County, Arkansas 72205.

5.      At all relevant times, the Skyline Enterprise is and was controlled, directly and indirectly, by the Schwartz Defendants. Further, the Skyline Enterprise entities were and are largely comprised of undercapitalized shell companies, with no employees and no physical addresses.

6.      Further, upon information and belief, the individuals purportedly employed by the Skyline Enterprise facilities are in fact the personal employees of the Schwartz Defendants.

7.      Indeed, the purported business address for each of the Skyline Enterprise entities is alleged in state filings to be the same: 505 Marlboro Road, Wood-Ridge, New Jersey 07075. This address is simply the second floor of a pizza parlor that the Schwartz Defendants used as the address for all their shell companies and sham corporations at the time of the residency of Lois M. Rack at the Facility.

8.      The Skyline Enterprise is nothing more than the alter-ego of the Schwartz Defendants, who operate and control it. The Skyline Enterprise entities are similarly alter egos of the Schwartz Defendants, as they do not maintain any separate corporate existence independent of the Schwartz Defendants and also do not abide by any corporate formalities.  Further, the Skyline Enterprise entities were purposefully or negligently undercapitalized from their inception by the Schwartz Defendants.

9.      From its inception, the structure of the Skyline Enterprise was designed to obscure the true nature of the Schwartz Defendants' interests in, and control over, the Skyline Enterprise by deploying a series of shell companies and complex structures which existed in name only.  The sole function of these machinations was to insulate the Schwartz Defendants from liability while concurrently securing their ability to control the

operations of certain nursing homes, including the Facility, and the profits flowing therefrom.

10.    The reality is that the Schwartz Defendants, at all relevant times, were directly and actively involved in the day to day operations of the Facility.

11.    During Lois M. Rack's residency at the Facility, the corporate structure utilized by the Skyline Enterprise served no practical purpose other than to attempt to avoid accountability and liability in tort, contract, and administrative proceedings.

12.    As a result, the Schwartz Defendants are the real parties in interest underlying the Skyline Enterprise. This is especially true since the Skyline Enterprise, and each of the various entities comprising same, are nothing more than the alter-egos of the Schwartz Defendants.

13.    At all material times, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each acted in concert with and conspired with the Skyline Enterprise and the Schwartz Defendants to facilitate the nonfeasance and malfeasance of the Skyline Enterprise and the Schwartz Defendants described herein, as detailed below. Defendants CIBC and Woodland Hills HC Property Holdings, LLC each, at all relevant times, had knowledge of the Skyline Enterprise's and the Schwartz Defendants' machinations, wrongdoing, and tortious conduct and yet continued to facilitate same through the various means described herein.

## RISE AND FALL OF THE SKYLINE ENTERPRISE

14.    In 2005, Defendants Joseph Schwartz—a longtime insurance broker with absolutely no experience in operating nursing homes or long term care facilities of any kind—and his wife, Defendant Rosie Schwartz, founded the Skyline Enterprise, which

4

they purportedly ran from an office on top of a run-down pizza parlor in Wood-Ridge, New Jersey. Recent reports say this office above a pizza joint was a running joke in the nursing home industry as early as 2015.

15.     Over its first decade of existence, the Schwartz Defendants, nominally through the Skyline Enterprise, only owned and operated six health care facilities total. But in early 2015, the Schwartz Defendants, nominally through the Skyline Enterprise, started to rapidly acquire health care facilities—mainly nursing homes—all across the country. The Schwartz Defendants, nominally through the Skyline Enterprise, acquired approximately 70 nursing homes in the year 2015 alone. At their peak, in approximately late 2017, the Schwartz Defendants, nominally through the Skyline Enterprise, owned and operated 114 long term care facilities nationwide.

16.     But the warning signs regarding the Skyline Enterprise and the Schwartz Defendants' operations had already started flashing in 2015. Multiple lawsuits had already been filed against the Schwartz Defendants and/or the Skyline Enterprise in numerous jurisdictions for claims alleging breaches of contract, fraud, failures to pay for goods and services provided to nursing homes, failures to pay as guarantors related to nursing home, and converting for personal gain $1.5 million of insurance premiums related to health care facilities. All of these warning signs pointed to a pattern of conduct: the Schwartz Defendants, nominally through the Skyline Enterprise, had a habit of not paying bills to vendors, utilities, and landlords nor paying wages to staff.

17.     One vendor, Health Care Services Group, had contracts with the nursing homes operated by the Schwartz Defendants, nominally through the Skyline Enterprise, in Pennsylvania, Arkansas, and elsewhere, to provide services including housekeeping,

5

laundry, and dining. In 2015, within a matter of months of the Schwartz Defendants, nominally through the Skyline Enterprise, taking over the operations of the facilities the checks to Health Care Services Group stopped flowing. And by August of 2016, according to court filings, the Schwartz Defendants, nominally through the Skyline Enterprise, were already indebted to Health Care Services Group for almost $1.7 million for unpaid services related to only 5 Arkansas nursing homes.

18.     Indeed, the Skyline Enterprise's and the Schwartz Defendants' failures to pay vendors for necessary services foreseeably led to issues with the care provided at the Schwartz Defendants' nursing homes, including the Facility and others in Arkansas. Within just six months of the Schwartz Defendants' acquisition of the Facility and others in Arkansas, the Arkansas Attorney General was investigating the Schwartz Defendants and the Skyline Enterprise for neglect and abuse at their facilities.

19.     Starting at about the same time in 2016, there were numerous reports related to the Schwartz Defendants' nursing homes in the state of Kansas that the Schwartz Defendants, nominally through the Skyline Enterprise, were still routinely failing to pay vendors, utilities, and staff. Indeed, it was reported that staff paychecks would be direct deposited, taken back, and then re-issued days later on paper checks.

20.     More troubling, though, were the reports of the failures to pay vendors and utilities. When vendors or utilities were not paid, vital supplies and services were not made available to the nursing homes and *ipso facto* their residents. The supplies that were routinely withheld due to these failures to pay vendors included food, power, water, and toiletries. These reports continued throughout 2017.

21.     Reports from the same time out of Nebraska described at least one instance

6

where a food vendor stopped delivering food to a nursing home owned and operated by the Schwartz Defendants, nominally through the Skyline Enterprise, because the vendor was not being paid. So the staff had to buy bread for the residents using petty cash, which quickly ran out.

22.     In a series of four agreements with the Arkansas Attorney General's office, from April of 2017 to May of 2018, the Schwartz Defendants, nominally through the Skyline Enterprise, agreed to pay approximately $205,000 in civil fines and staff training costs to settle 12 separate investigations by the Attorney General's office into abuse and neglect at facilities they owned and operated in Arkansas. To provide context, the Arkansas Attorney General's office fined all other nursing home operators in Arkansas a total of $492,000 over the same time period.

23.     Regarding their Kansas nursing homes, the Schwartz Defendants, nominally through the Skyline Enterprise, were in default under a loan agreement related to a revolving credit facility up to $6 million with Congressional Bank as early as March of 2017.[3]

24.     Beginning in August of 2017, 18 checks received from the Schwartz Defendants, nominally through the Skyline Enterprise, by the state of Kansas associated with bed tax for their Kansas facilities bounced.

25.     By early March of 2018, the state of Nebraska was forced to act: it seized 21 facilities owned and operated by the Schwartz Defendants, nominally through the Skyline Enterprise, and took over the operations to save the lives of the resident

---

[3] At least $1,083,856.90, plus interest, fees, and costs, were due and outstanding under that loan agreement with Congressional Bank by March of 2018.

population there.

26.     One week later, the state of Kansas was forced to take similar action. The state seized 15 nursing homes owned and operated by the Schwartz Defendants, nominally through the Skyline Enterprise, and placed them into receivership, stating that all the residents were "in immediate risk of irreparable injury, loss or damage."

27.     Kansas was forced to take such action after a conversation between a state official and Defendant Joseph Schwartz during which Defendant Joseph Schwartz stated he was not going to be able to make the next payroll and that he did not have enough money to pay basic utilities and food service vendors. By that time, the state of Kansas had already received numerous reports of failures to pay vendors.

28.     By May of 2018, the state of South Dakota acted similarly, placing 19 facilities owned and operated by the Schwartz Defendants, nominally through the Skyline Enterprise, into receivership after receiving emergency messages from an upper level employee within the Skyline Enterprise. One message from this employee, with the subject line "URGENT" stated: "I have not gotten any information from Skyline!!! I just had a call from Louis Schwartz – he says STATE has to do something – there is no money – he told me to discharge residents???? I need water paid at [two facilities] today or it will be SHUT OFF – Skyline is SILENT!!!! I need Electric paid at [one facility] or shut off – Skyline is SILENT!!! I NEED HELP!!!!"

29.     As of the filing of this Amended Complaint, multiple other states have recently taken similar action and seized nursing homes and their licenses from the Schwartz Defendants, including Arkansas, Pennsylvania, New Jersey, Massachusetts, and Florida.

30.     Recent revelations show that the Schwartz Defendants were operating the Skyline Enterprise as their personal bank account, illegitimately siphoning cash out of the Enterprise for personal use to the detriment of all of their residents in the aggregate. It has also been revealed that the Schwartz Defendants, motivated by their reckless desire to line their pockets with revenues generated by nursing homes, rapidly took on outrageously high debts to facilitate their speedy acquisitions of nursing home assets. To facilitate the acquiring of these outrageous debts, the Schwartz Defendants over-leveraged and cross-collateralized their existing nursing home assets already within the Skyline Enterprise.

31.      Similarly, it has recently become known that the Schwartz Defendants were deducting funds from their staffs' paychecks on a monthly basis under the guise of insurance costs, but never actually purchasing insurance coverage with the deducted funds.

32.     Apparently the Schwartz Defendants, in embarking on the course of conduct outlined above, never intended to actually own and operate the nursing homes nationwide that they acquired for any meaningful period of time. Nor did they ever intend to face the consequences for their manifestly substandard operations.

33.     Instead, the Schwartz Defendants' scheme appears to have been a short-con: acquire—as quickly and as recklessly as possible—the maximum number of nursing home assets that they feasibly could; personally profit from the aggregated operations of those substantial assets for as long as possible; maximize those illegitimate personal profits by cutting costs, not paying wages or bills, and not providing adequate or sufficient care with no regard for the foreseeable consequences to the frail and vulnerable adults

in their care; and then cut and run with those profits as soon as vendors, regulators, and residents caught on to their schemes and fraudulent conduct.

34.    Apparently, since the Schwartz Defendants never intended to face the consequences of their actions, either in tort, contract, or administrative proceedings, they had no reservations about pursuing the above-outlined course of conduct. They always intended to defraud their staff, their residents, state governments, and the federal government during this time.

## INVOLVEMENT OF THE CONSPIRING DEFENDANTS

35.    All in all, the fallout from the Schwartz Defendants' and the Skyline Enterprise's rapid rise and even more rapid collapse has been catastrophic, and has left residents, their families, politicians, and regulators alike wondering how a group of scam artists like the Schwartz Defendants were ever able to rapidly and recklessly ascend to such a position of authority and control over the lives of so many frail, vulnerable adults throughout this country, including hundreds in the state of Arkansas.

36.    Although the frail and elderly residents residing in the Schwartz Defendants' nursing homes across the country did not know of, and could never have foreseen, the schemes and machinations utilized by the Schwartz Defendants at their nursing homes— including the Facility—the same cannot be said about others with whom the Schwartz Defendants conducted business during this time. Indeed, it should not come as a shock to anyone that the Schwartz Defendants did not pull off their reckless, fraudulent schemes and machinations unaided by third parties, which leads to Defendants CIBC and Woodland Hills HC Property Holdings, LLC.

37.    As a result of the well documented abuse issues and financial struggles

plaguing the Skyline Enterprise and the Schwartz Defendants as early as 2015 (described above), and the Skyline Enterprise's and the Schwartz Defendants' respective lack of experience and credentials for providing care and services to nursing home residents, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each, at all times relevant to this action, had knowledge that the Skyline Enterprise and the Schwartz Defendants were completely unqualified, both financially and experientially, to own, operate, manage, and control nursing homes or other long term care facilities.

38.     This knowledge made it highly foreseeable to Defendants CIBC and Woodland Hills HC Property Holdings, LLC, at all relevant times, that, should the Skyline Enterprise and the Schwartz Defendants obtain control in 2016 over the real property and operations of nursing homes in Arkansas, including the Facility, the current and future residents residing at the Facility would likely suffer harm, abuse, neglect, and exploitation.

39.     Despite Defendant CIBC's knowledge of the Skyline Enterprise's care and financial issues, on or about September 26, 2016, Defendant CIBC extended a $45,600,000 loan to the Skyline Enterprise, personally guaranteed by the Schwartz Defendants (the "Owner Loan"), to facilitate their acquisition of nine nursing homes in the State of Arkansas, including the Facility.

40.     Similarly, on or about the same date, Defendant CIBC extended a $6,000,000 operating line of credit to the Skyline Enterprise, personally guaranteed by the Schwartz Defendants (the "Operator Loan"), to facilitate their operations of nine nursing homes in the State of Arkansas, including the Facility.

41.     Despite Defendant Woodland Hills HC Property Holdings, LLC's knowledge of the Skyline Enterprise's care and financial issues, on or about September, 2016,

11

Defendant Woodland Hills HC Property Holdings, LLC sold the real property comprising the Facility to the Skyline Enterprise and the Schwartz Defendants. Defendant Woodland Hills HC Property Holdings, LLC had previously purchased the property in 2012 for $4,540,000. Under the terms of the sale to the Skyline Enterprise and the Schwartz Defendants, Defendant Woodland Hills HC Property Holdings, LLC would sell the property for $7,504,840.

42.     Defendant Woodland Hills HC Property Holdings, LLC, thus, was motivated to sell the property to the Skyline Enterprise and the Schwartz Defendants, despite its knowledge and awareness that they lacked the financial wherewithal and the healthcare experience to safely and adequately provide services to the current and future residents there, and despite the foreseeability to Defendant Woodland Hills HC Property Holdings, LLC that the current and future residents of the Facility would likely suffer harm, abuse, neglect, and exploitation at the hands of the Skyline Enterprise and the Schwartz Defendants as a result of the sale, by the prospect of a windfall financial gain: a profit of almost $3 million after only 4 years of ownership.

43.     Defendants CIBC and Woodland Hills HC Property Holdings, LLC each never warned anyone at any point in time leading up to the effectuation of the loan agreements or of the sale of the Facility to the Skyline Enterprise and the Schwartz Defendants about the Skyline Enterprise's and the Schwartz Defendants' financial and healthcare delivery issues, despite their respective knowledge of same.

44.     Importantly, Defendant CIBC not only had knowledge of the Skyline Enterprise's and the Schwartz Defendants' healthcare delivery and financial issues prior to the making of the Owner Loan and the Operator Loan, it also had intimate knowledge

of both every day subsequent. This knowledge predated Lois M. Rack's residency at the Facility by months if not years, and also existed during every day of Lois M. Rack's residency there.

45.     Because programs like Medicare and Medicaid can take as long as 90 days to reimburse providers for services, providers need revolving lines of credit to fund the operations in the meantime. The Operator Loan was a revolving line of credit that was extended, paid down, and re-extended to the Schwartz Defendants, nominally through the Skyline Enterprise, on a regular basis. This Operator Loan facilitated the Schwartz Defendants' ongoing operations of the Facility. Without the Operator Loan, the Schwartz Defendants would have been unable to operate the Facility. Importantly, the terms of the Operator Loan required the Skyline Enterprise and the Schwartz Defendants to provide detailed financial reports to Defendant CIBC on a regular basis.

46.     As already explained, the Schwartz Defendants utilized the operations of the Facility as a vehicle to funnel Medicare, Medicaid, and private insurance dollars through their shell companies and into their own pockets. By underfunding the operations, defrauding residents and employees, and not paying vendors, the amount of money available to be funneled was maximized. The Operator Loan served as Defendant CIBC's vehicle for obtaining its "cut" of these funneled proceeds of the fraudulent operations, about which CIBC maintained actual knowledge due to its access to detailed financial reporting.

47.     As long as the Schwartz Defendants, nominally through the Skyline Enterprise, continued to operate the Facility they could continue to routinely funnel the monies out of the operations and away from the provision of care, and Defendant CIBC

could continue to routinely collect its "cut." That is until the Schwartz Defendants decided to start treating Defendant CIBC the way they treated almost all other vendors and stop paying.

48.     On August 11, 2017, Defendant CIBC served the Skyline Enterprise and the Schwartz Defendants a notice of Events of Default regarding the Owner Loan. That same day, Defendant CIBC served the Skyline Enterprise and the Skyline Defendants with notice of Events of Default under the Operator Loan.

49.     One basis stated by Defendant CIBC for the defaults under the Owner Loan and the Operator Loan was that the "combined EBITDAR/Fully Adjusted of [the Skyline Enterprise] for the calendar quarter ended June 30, 2017, was…17.7% less than the [] amount required" under the loan agreement. Thus, as of August 11, 2017, Defendant CIBC had actual knowledge of the financial issues plaguing the Skyline Enterprise and the Schwartz Defendants. These financial issues most certainly forecast to Defendant CIBC that resident care issues existed as well.

50.     Despite this, Defendant CIBC—perhaps motivated by its desire to continue receiving its "cut"—chose to forebear taking action on the defaults at this time. This decision to forebear provided substantial assistance to the Schwartz Defendants in their schemes to defraud. For context, Lois M. Rack was still not even a resident of the Facility yet.

51.     By October 19, 2017, the events of default previously identified under the Owner Loan and the Operator Loan had not been cured. Nevertheless, Defendant CIBC decided to forebear from exercising any remedies against the Skyline Enterprise and the Schwartz Defendants during the period ending on December 31, 2017, and further

14

decided to conceal the events of default and the obvious financial issues plaguing the Skyline Enterprise and the Schwartz Defendants. This decision to forebear and to conceal the defaults provided substantial assistance to the Schwartz Defendants in their schemes to defraud.

52.     The stated motivation for this forbearance and concealement was Defendant CIBC's desire to recoup as much of the monies loaned under the Owner Loan and Operator Loan as possible for itself from the obviously struggling operations of the Skyline Enterprise, notwithstanding the foreseeability that residents at the Skyline Enterprise's Arkansas facilities, including the Facility, would suffer harm from the continued control over the operations by the Schwartz Defendants.

53.     Defendant CIBC's forbearance, which aided the Schwartz Defendants' continued operations of the Facility, was motivated by its desire to continue receiving its "cut" of the proceeds from the fraudulent operations, as well as to recoup as much of the principal under both loans as possible, which could only happen if the Schwartz Defendants and the Skyline Enterprise continued operating the Facility. Defendant CIBC knew about the Schwartz Defendants' fraudulent schemes and malfeasance, and knew about their troubled financial condition, but was more concerned about continuing to collect its "cut" from the Schwartz Defendants than it was for the health and safety of the frail, vulnerable adults residing at the Facility. For context, Lois M. Rack was still not a resident of the Facility as of October 19, 2017.

54.     By February 16, 2018, Defendant CIBC issued a subsequent notice to the Skyline Enterprise and the Schwartz Defendants that the defaults originally noticed in September of 2017 had still not been cured. However, Defendant CIBC again intentionally

chose to continue to extend the Operator Loan to them and to conceal the Skyline Enterprise's and the Schwartz Defendants' financial issues, in the admitted hopes that Defendant CIBC would be repaid the full amount due and owing, plus extra interest as a result of the defaults. Each new extension, and/or every re-extension, of the Operator Loan provided substantial assistance to the Schwartz Defendants in their schemes to defraud. Each new draw on the Operator Loan provided substantial assistance to the Schwartz Defendants in their schemes to defraud.

55.    On that date, Defendant CIBC failed to inform anyone about the financial difficulties plaguing the Skyline Enterprise and the Schwartz Defendants related to their Arkansas facilities, including the Facility, and instead, Defendant CIBC demanded repayment under the loans of the principal outstanding amounts, plus extra interest, no later than March 1, 2018.

56.    On February 23, 2018, Defendant CIBC sent the Skyline Enterprise and the Skyline Defendants a reminder that they had demanded payment no later than March 1, 2018. Defendant CIBC continued to conceal the financial issues plaguing the Skyline Enterprise and the Schwartz Defendants, instead focusing only on its own financial interests in repayment and profit.

57.    On information and belief, Defendant CIBC benefitted financially from forbearing on the defaults originally noticed in August of 2017.

58.    Thus, prior to the Schwartz Defendants' acquisition of the Facility, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each had knowledge of and were aware of the Schwartz Defendants' and the Skyline Enterprise's dangerous financial condition, prior financial misconduct, lack of financial ability to provide adequate

and appropriate care to nursing home residents in Arkansas, and lack of clinical ability to provide adequate and appropriate care to nursing home residents in Arkansas.

59. Continuing every day thereafter leading up the admission of Lois M. Rack to the Facility, Defendant CIBC had knowledge of and was aware of the Schwartz Defendants' and the Skyline Enterprise's dangerous financial condition, prior financial misconduct, lack of financial ability to provide adequate and appropriate care to nursing home residents in Arkansas, and lack of clinical ability to provide adequate and appropriate care to nursing home residents in Arkansas.

60. Then, every day during the residency of Lois M. Rack at the Facility, Defendant CIBC had knowledge of and was aware of the Schwartz Defendants' and the Skyline Enterprise's dangerous financial condition, prior financial misconduct, lack of financial ability to provide adequate and appropriate care to nursing home residents in Arkansas, and lack of clinical ability to provide adequate and appropriate care to nursing home residents in Arkansas.

61. Despite this knowledge, Defendant CIBC continued to regularly extend the Operator Loan to the Schwartz Defendants and the Skyline Enterprise.

62. Despite this knowledge, Defendant CIBC continued to extend on a regular basis the Operator Loan to the Schwartz Defendants and the Skyline Enterprise after sending a notice of default in August of 2017.

63. Despite this knowledge, Defendant CIBC continued to extend the Operator Loan on a regular basis to the Schwartz Defendants and the Skyline Enterprise after the defaults previously noticed were still not cured months later in October of 2017.

64. Despite this knowledge, Defendant CIBC continued to extend the Operator

Loan to the Schwartz Defendants and the Skyline Enterprise after the defaults previously noticed were still not cured months later in October of 2017, and then promised a grace period of multiple additional months to cure through December 31, 2017.

65.     Despite this knowledge, Defendant CIBC continued to extend the Operator Loan to the Schwartz Defendants and the Skyline Enterprise after the defaults previously noticed were still not cured even after the grace period expired, continuing into February of 2018.

66.     At all material times Defendants CIBC and Woodland Hills HC Property Holdings, LLC each concealed its respective knowledge and awareness of the Schwartz Defendants' and the Skyline Enterprise's schemes, machinations, fraud, malfeasance, and nonfeasance related to the Facility.

## JURISDICTION AND VENUE

67.     Robert E. Rack is the Special Administrator for the Estate of Lois M. Rack, deceased, pursuant to Letters of Administration, attached as Exhibit A, and brings these claims on behalf of the Estate of Lois M. Rack, deceased, and on behalf of the wrongful death beneficiaries of Lois M. Rack, pursuant to Arkansas Survival of Actions Statute (Arkansas Code Annotated § 16-62-101) and the Arkansas Wrongful Death Act (Arkansas Code Annotated § 16-62-102).

68.     Lois M. Rack became a resident of the Facility's physical location on November 22, 2017, long after the Conspiring Defendants learned of the Skyline Enterprise and the Schwartz Defendants' financial issues, healthcare delivery issues, malfeasance, and nonfeasance described above.

69.     A substantial portion of the actions that give rise to this Complaint occurred

and/or were directed at the Facility, in Pulaski County.

70.     Accordingly, pursuant to Ark. St. §16-4-101 and Ark. St. §16-55-213(e), jurisdiction and venue are proper in this Court.

<u>**PARTIES**</u>

71.     Plaintiff, Lois M. Rack, is an adult individual and resident of the State of Arkansas who resided at the Facility from November 22, 2017 until January 30, 2018.

72.     Plaintiff, Robert E. Rack, is an adult individual, a resident of the State of Arkansas, and the Special Administrator for the Estate of Lois M. Rack, deceased, pursuant to Letters of Administration attached as Exhibit A.  Robert E. Rack resides at 603 Ash Street, Augusta, Arkansas 72006 in Woodruff County.

73.     Defendant, Woodland Hills HC Property Holdings, LLC, is a limited liability company duly licensed, organized and existing under and by virtue of the law of Georgia, and can be served with process in this matter c/o The Corporation Company, 124 W. Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

74.     Defendant CIBC is a corporation duly licensed, organized, and existing under and by virtue of the laws of Illinois and can be served with process in this matter c/o Corporation Service Company at 84 State St., Boston, MA 02109-1503.

75.     Defendant, Joseph Schwartz, is an individual conducting business in the State of Arkansas, with offices and a place of business at 505 Marlboro Road, Wood-Ridge, New Jersey 07075, 1854 59th Street, Brooklyn, NY 11204-2303, 21 Briarwood Lane, Suffern, NY  10901-3601 or 30 Scenic Drive, Suffern, NY  10901-1605.

76.     Defendant, Joseph Schwartz, is engaged in the business of owning, operating and/or managing nursing homes, including the Facility, providing healthcare,

medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Pulaski County, Arkansas; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Lois M. Rack and in the operation of the Facility.

77.     Defendant, Rosie Schwartz, is an individual conducting business in the State of Arkansas, with offices and a place of business at 505 Marlboro Road, Wood-Ridge, New Jersey 07075, 1854 59th Street, Brooklyn, NY 11204-2303, 21 Briarwood Lane, Suffern, NY  10901-3601 or 30 Scenic Drive, Suffern, NY  10901-1605.

78.     Defendant, Rosie Schwartz, is engaged in the business of owning, operating and/or managing nursing homes, including the Facility, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Pulaski County, Arkansas; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom

played a role in the care provided to Lois M. Rack and in the operation of the Facility.

79.    Defendants, John Doe 1 through 5, are entities and/or persons, who either provided care and services to Lois M. Rack, or who are directly or vicariously liable for the injuries of Lois M. Rack.   Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation.  Defendants, John Doe 1 through 5, are named insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to the care, treatment and services provided to or withheld from Lois M. Rack during her residency at the Facility. See Affidavit attached hereto as Exhibit B.

## SCHWARTZ DEFENDANTS' CONDUCT

80.    Prior to her death on February 12, 2018, Lois M. Rack was a resident of the Facility.

81.    Lois M. Rack was incapable of independently providing for all of her daily care and personal needs without reliable assistance.   In exchange for financial consideration, she was admitted to the Schwartz Defendants' Facility to obtain such care and protection.

82.    The Schwartz Defendants, through advertising, marketing campaigns, promotional materials, information sheets, and documents filed with the Arkansas Office of Long Term Care, held out themselves and the Facility as being able to provide medical, skilled nursing, rehabilitation, therapy and custodial care services to elderly and frail individuals, including Lois M. Rack.

83.    The Schwartz Defendants assumed responsibility for Lois M. Rack's total healthcare, including the provision of nutrition, hydration, and activities of daily living, as

well as medical, skilled nursing, rehabilitation and therapy care.

84.     The Schwartz Defendants further assumed responsibility to provide Lois M. Rack with ordinary custodial and hygiene services.

85.     The Schwartz Defendants exercised complete and total control over the healthcare of all residents of the Facility, including Lois M. Rack.

86.     The Schwartz Defendants were responsible for the operation, planning, management, and quality control of the Facility.

87.     The control exercised over the Facility by the Schwartz Defendants included, inter alia: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the Facility administrator and director of nursing; supervision and oversight of the staff; development and implementation of nursing staff in-services; development and implementation of all pertinent policy and procedures; monitoring customer satisfaction; performing mock surveys; risk management; corporate and regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; development and implementation of reimbursement strategies; retaining contract management, physician, therapy and dietary services; dictating census and payor source quotas for admissions to the facility; and employing the Facility-level, regional and corporate staff who together operated the Facility.

88.     The Schwartz Defendants utilized survey results and various other reports, including quality indicators, to monitor the care being provided at their nursing homes, including the Facility.

89.     The Schwartz Defendants exercised ultimate authority over all budgets and

had final approval over the allocation of resources for staffing, supplies, and operations of the Facility.

90.     As a part of their duties and responsibilities, the Schwartz Defendants had an obligation to establish policies and procedures that addressed the needs of the residents of the Facility, including Lois M. Rack, with respect to the recognition and/or treatment of medical conditions, such as those experienced by Lois M. Rack, so as to ensure that timely and appropriate care was provided for such conditions whether within the Facility, or obtained from other medical providers.

91.     The Schwartz Defendants were responsible for supervising the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

92.     The Schwartz Defendants had an obligation to employ competent, qualified and trained staff so as to ensure that proper care, treatment, and services were rendered to individuals having medical, nursing and/or custodial needs, such as those presented by Lois M. Rack as set forth herein.

93.     As a part of their duties and responsibilities, the Schwartz Defendants had an obligation to maintain and manage the Facility with adequate staff and sufficient resources to ensure the timely recognition and appropriate treatment of the medical, nursing and/or custodial needs of the residents, such as Lois M. Rack, whether within the Facility, or obtained from other medical care providers.

94.     The Schwartz Defendants each owed and failed to fulfill the following duties to Lois M. Rack:

　　　　　　　　a. the duty to use reasonable care in the maintenance of safe and
　　　　　　　　　 adequate facilities and equipment;

23

b.  to select, train and retain only competent staff;

c.  to oversee and supervise all persons who practiced nursing, medical and/or skilled healthcare within the Facility;

d.  to staff the facility with personnel sufficient both in number and in training to provide the care and services required by the Facility's residents;

e.  to ensure that the Facility's residents were treated with dignity and respect;

f.  to maintain sufficient funding, staffing and resources for the Facility so that its residents were provided with the care and services they required;

g.  to formulate, adopt, and enforce rules, procedures and policies to ensure quality care and healthcare for all residents, and to update the same as required by the applicable standards of care;

h.  to take adequate measures to rectify known problems in the delivery of hygiene and custodial services as well as in the delivery of medical, skilled nursing, rehabilitation, and therapy care;

i.  to warn residents, their family and/or representatives of the Schwartz Defendants' inability to provide adequate care and services when the Schwartz Defendants knew or should have known of their deficiencies in providing such care and services;

j.  to refuse admission to residents to whom they knew or should have known they could not provide reasonable care and services;

k.  to not admit more residents than to whom the Schwartz Defendants could safely provide adequate care and services;

l.  to keep the Facility's residents free from physical and mental abuse and

neglect;

m. to provide a safe, decent and clean living environment for the Facility's residents;

n. and to assist the residents in retaining and exercising all of the Constitutional, civil and legal rights to which they are entitled as citizens of the United States and of the State of Arkansas.

95.     The Schwartz Defendants made a conscious decision to operate and/or manage the Facility so as to maximize the profits at the expense of the care required to be provided to their residents, including Lois M. Rack.

96.     In their efforts to maximize profits, the Schwartz Defendants negligently, intentionally and/or recklessly mismanaged and/or reduced staffing levels below the level necessary to provide adequate care to the residents.

97.     Despite their knowledge of the likelihood of harm due to insufficient staffing levels, and despite complaints from staff members about insufficient staffing levels, the Schwartz Defendants recklessly and/or negligently disregarded the consequences of their actions, and/or negligently caused staffing levels at the Facility to be set at a level such that the personnel on duty could not and did not meet the needs of the Facility's residents, including Lois M. Rack.

98.     The Schwartz Defendants intentionally increased the number of sick, elderly, and frail residents with greater health problems requiring more complex medical care.

99.     The Schwartz Defendants knew that this increase in the acuity care levels of the resident population would substantially increase the need for staff, services, and supplies necessary for the new resident population.

100.    The Schwartz Defendants knew, or should have known, that the acuity needs of the residents in their nursing homes increased and, therefore, the required resources also increased, including the need for additional nursing staff in order to meet the needs of the residents, including Lois M. Rack.

101.    The Schwartz Defendants failed to provide the resources necessary, including sufficient staff, to meet the needs of the residents, including Lois M. Rack.

102.    The Schwartz Defendants knowingly established staffing levels that created recklessly high resident to staff ratios, including high resident to nurse ratios and high resident to nurse aide ratios.

103.    The Schwartz Defendants knowingly disregarded resident acuity levels while making staffing decisions, and also knowingly disregarded the minimum time required by the staff to perform essential day-to-day functions and treatments.

104.    The acts and omissions of the Schwartz Defendants were motivated by a desire to increase the profits of the nursing homes they own, including the Facility, by knowingly, recklessly, and with total disregard for the health and safety of the residents, reducing expenditures for needed staffing, training, supervision, and care to levels that would inevitably lead to severe injuries, such as those suffered by Lois M. Rack.

105.    The actions of the Schwartz Defendants were designed to increase reimbursements by governmental programs, which are the primary source of income for the Facility.

106.    The aforementioned acts directly caused injury to Lois M. Rack and were known by the Schwartz Defendants.

107.    The Schwartz Defendants knowingly sacrificed the quality of care received

26

by all residents, including Lois M. Rack, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Lois M. Rack, as described herein, which included two Stage II sacral pressure ulcers; gangrene; urinary tract infection; sepsis; poor hygiene; unnecessary pain and suffering; and ultimately death.

108.    At the time and place of the incidents hereinafter described, the Facility whereupon the incidents occurred was individually, collectively, and/or through a joint venture, owned, possessed, controlled, managed, operated and maintained under the exclusive control of the Schwartz Defendants.

109.    At all times material hereto, the Schwartz Defendants were operating personally or through their agents, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Schwartz Defendants.

110.    The aforementioned incidents were caused solely and exclusively by reason of the negligence, carelessness and recklessness of the Schwartz Defendants, their agents, servants, contractors, subcontractors, staff and/or employees and was due in no part to any act or failure to act on the part of Lois M. Rack.

111.    The Schwartz Defendants, their agents, servants, contractors, subcontractors, staff and/or employees were, at all times material hereto, licensed professionals/professional corporations and/or businesses and the Plaintiff is asserting professional liability claims against them.

112.    In addition to all other claims and demands for damages set forth herein,

27

Plaintiff is asserting claims for ordinary negligence, custodial neglect, and corporate negligence against the Schwartz Defendants as they each are directly and vicariously liable for their independent acts of negligence, for their acts of general negligence, and for their acts of general corporate negligence.

## FACTUAL ALLEGATIONS REGARDING THE INJURIES OF
## LOIS M. RACK

113.    Lois M. Rack was admitted on November 22, 2017, as a resident of the facility known as Hillview Post Acute and Rehabilitation Center.  Except for times when she was hospitalized, Lois M. Rack remained a resident of the facility until her death on February 12, 2018.

114.    Upon admission to the Facility and during the relevant time period, Lois M. Rack was dependent upon the staff for her physical, mental, psycho-social, medical, nursing and custodial needs, requiring total assistance with activities of daily living, and she had various illnesses and conditions that required evaluation and treatment.

115.    At all times during her residency, and during and after the Schwartz Defendants' care and supervision, Lois M. Rack lacked sufficient understanding or capacity to make or communicate decisions to meet the essential requirements for her health and safety, and she was incapable of conducting or managing her personal and business affairs.  Thus, Lois M. Rack was an incapacitated person as that term has been interpreted per Ark. Code Ann. section 28-65-101, *et seq.*

116.    The Schwartz Defendants knew that Lois M. Rack was at risk for future illnesses and injuries, including pressure ulcers, sepsis, and infections.

117.    The Schwartz Defendants engaged in a pattern of care replete with harmful

and injurious commissions, omissions and neglect as described herein.

118.    The Schwartz Defendants deprived Lois M. Rack of adequate care, treatment, food, water and medicine and caused her to suffer numerous illnesses and injuries, which included two Stage II sacral pressure ulcers; gangrene; urinary tract infection; sepsis; poor hygiene; unnecessary pain and suffering; and ultimately death.

119.    The severity of the negligence inflicted upon Lois M. Rack by the Schwartz Defendants accelerated the deterioration of her health and physical condition, and resulted in physical and emotional injuries that caused her severe pain, suffering and mental anguish, together with unnecessary hospitalizations.

120.    These injuries, as well as the conduct specified herein, caused Lois M. Rack to suffer a loss of personal dignity, together with degradation, anguish and emotional trauma.

121.    The Schwartz Defendants accepted Lois M. Rack as a resident fully aware of her medical history and understood the level of nursing care she required.

122.    Lois M. Rack's chart includes and evidences missing and incomplete documentation.  For instance, her nursing home chart is devoid of activities of daily living documentation.

123.    The severity of the negligence inflicted upon Lois M. Rack by the Schwartz Defendants' mismanagement, improper/under-budgeting, understaffing of the Facility and lack of training or supervision of the Facility's employees, failure to provide adequate and appropriate health care; engaging in incomplete, inconsistent and fraudulent documentation; failure to develop an appropriate care plan; failure to ensure the highest level of physical, mental and psychosocial functioning was attained; failure to provide

29

proper medication; and failure to provide sufficient food and water, causing Lois M. Rack to suffer two Stage II sacral pressure ulcers; gangrene; urinary tract infection; sepsis; poor hygiene; unnecessary pain and suffering; and ultimately death.

124.    As a result of the negligence, carelessness and recklessness of the Schwartz Defendants herein described, Lois M. Rack was caused to suffer serious and permanent injuries as described herein, to, in and about her body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases she had, and/or the accelerated deterioration of her health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and more particularly, two Stage II sacral pressure ulcers; gangrene; urinary tract infection; sepsis; poor hygiene; and unnecessary pain and suffering, along with other body pain and damage, as well as anxiety, reaction and injury to her nerves and nervous system, some or all of which were permanent, together with other medical complications.

125.    The severity of the recurrent negligence inflicted upon Lois M. Rack while under the care of the Schwartz Defendants at the Facility accelerated the deterioration of her health and physical condition and resulted in the physical and emotional injuries, including, but not limited to those described below:

        a)     Two Stage II sacral pressure ulcers;

        b)     Urinary tract infection;

        c)     Sepsis;

        d)     Gangrene;

        e)     Poor hygiene;

        f)     Poor oral care;

g)   Unnecessary pain and suffering; and

h)   Death.

The above-identified injuries, as well as the conduct specified below, caused Lois M. Rack to suffer loss of personal dignity, pain and suffering, hospitalizations, mental anguish, degradation, disability, disfigurement, and emotional distress.

126.   In surveys and inspections conducted in July 2017 for Hillview Post Acute and Rehabilitation Center, the Arkansas Office of Long Term Care repeatedly cited the Facility for deficiencies in the care, treatment and services provided to residents, including but not limited to failures to:

a)  Provide pressure ulcer treatments were provided as ordered by the physician to promote healing and potential deterioration;

b)  Assess a pressure ulcer upon readmission from the hospital and report it to the physician to facilitate prompt initiation of treatment;

c)  Consistently document physician ordered treatments to pressure ulcers to ensure nursing staff and physicians could evaluate treatments for effectiveness.

127.   In surveys and inspections conducted in February 2018 for Hillview Post Acute and Rehabilitation Center, the Arkansas Office of Long Term Care repeatedly cited the Facility for deficiencies in the care, treatment and services provided to residents, including but not limited to failures to:

a)  Ensure oral care was routinely and consistently provided.

128.   The extent to which the above citations directly included failures or deficiencies in the care, services and treatment provided to Lois M. Rack remains to be

31

discovered.  However, all of the above cited deficiencies establish that the Schwartz Defendants were on notice and aware of problems with resident care, including failures and deficiencies in care which caused the injuries alleged herein.

## CAUSES OF ACTION AGAINST SCHWARTZ DEFENDANTS

129.   Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

130.   Based upon the foregoing allegations regarding the Schwartz Defendants' control and management of Hillview Post Acute and Rehabilitation Center, and the injuries suffered by Lois M. Rack while he resided at the Facility, Plaintiff pleads the following causes of action:

**I.      Cause of action for civil conspiracy.**

131.   The Schwartz Defendants are liable for a conspiracy promoting wrongful conduct in a manner that caused injury to Lois M. Rack.

132.   The Schwartz Defendants had actual agreements regarding the patient census, levels of staffing, and amount of funds to be used in operating the Hillview Post Acute and Rehabilitation Center facility.

133.   The Schwartz Defendants actively monitored deficiencies in care at the Hillview Post Acute and Rehabilitation Center facility, as cited by the State of Arkansas in surveys, and were aware during the residence of Lois M. Rack that the operating funds being expended at the facility were not sufficient to meet the needs of the residents.

134.   Both of the Schwartz Defendants performed a part so that their acts, although apparently independent, were in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment.

135.    Additionally, each of the Schwartz Defendant is liable for conspiracy to the extent any act or declaration was made by another of the Schwartz Defendants in furtherance of the conspiracy.

136.    The Schwartz Defendants engaged in a conspiracy to obtain financing for the purchase and lease of Hillview Post Acute and Rehabilitation Center, in order to profit from the lease and fees, knowing that adequate operating funds would not be provided to meet the needs of residents such as Lois M. Rack.

137.    In fact, according to Court filings in the matter *CIBC Bancorp USA f/k/a/ The PrivateBank and Trust Company vs. Joseph Schwartz and Rosie Schwartz, 1:18-cv-02129, Unites States District Court for the Northern District of Illinois-Eastern Division*; the Schwartz Defendants were on notice of being in default of the Owner Loan and Operator Loan as early as August 1, 2017.

138.    It may be inferred from the Schwartz Defendants' actions that, knowing the risks and dangers such conduct posed to residents such as Lois M. Rack, the Schwartz Defendants pursued a course of conduct to divert funds intended to be used for patient care and services and, instead, funneled that money into corporate profits.

139.    Due to the injuries proximately caused by the tortious acts done in furtherance of a conspiracy between the Schwartz Defendants, Plaintiff is entitled to be compensated by an amount of money, which will reasonably and fairly compensate for her damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future; necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future, pain and suffering and mental anguish

experienced in the past and reasonably certain to be experienced in the future, disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries. The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

140.    In addition to compensatory damages, Plaintiff also is entitled to recover punitive damages for the civil conspiracy on the part of the Schwartz Defendants. Plaintiff alleges that the Schwartz Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conspiracy in the manner in which Hillview Post Acute and Rehabilitation Center was operated would naturally and probably result in injury to residents, such as Lois M. Rack. Yet, the Schwartz Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

## II.    Cause of action for ordinary negligence and failures in ordinary duties of care imposed on a long-term care facility.

141.    Based upon the allegations of control, management and involvement in the operation of Hillview Post Acute and Rehabilitation Center outlined above, the Schwartz Defendants, as well as their agents and employees, undertook duties of care to the residents at Hillview Post Acute and Rehabilitation Center, including Lois M. Rack.

142.    Based upon the state surveys of the facility and the assessments of Lois M. Rack alleged in the above paragraphs, it was foreseeable to the Schwartz Defendants that harm would result to Lois M. Rack if Defendants did not provide at least the care equivalent that is required of a nursing home caring for a resident in a similar state of

health, mental status and abilities.

143.   Among the duties Defendants owed to Lois M. Rack as the owners, operators, licensees, managers, consultants, agents, and employees of Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants were obligated to use ordinary care to determine the mental and physical condition of Lois M. Rack, to furnish Lois M. Rack the care and attention reasonably required by her mental and physical condition, and to follow the orders and directions of Lois M. Rack's attending physician and care plan regarding her activities of daily living and ordinary caretaking.

144.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to assist Lois M. Rack with her activities of daily living, including the failure to assist with oral care and grooming.

145.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide adequate oversight to ensure a safe environment.

146.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide proper equipment care and hygiene to prevent Lois M. Rack's feeding tube from becoming clogged.

147.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide proper safety precautions and tracheostomy care to prevent aspiration.

148.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide a sanitary environment and proper hygiene to prevent the development of infections, such as pneumonia.

149.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide basic care to ensure Lois M. Rack's quality of care and quality of life.

150.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide Lois M. Rack assistance with activities of daily living, hygiene and grooming and failed to sufficiently document the bathing, oral hygiene, grooming, and/or dressing provided to Lois M. Rack during her admission.

151.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to provide Lois M. Rack skin care treatments to maintain her skin integrity and prevent skin breakdown and the development of pressure ulcers, including a Stage III sacral pressure ulcer.

152.    The Schwartz Defendants were negligent in the hiring, training, retention and supervision of non-medical, caretaking staff and the professional nursing staff at Hillview Post Acute and Rehabilitation Center.

153.    The Schwartz Defendants understood that staffing at minimum levels did not necessarily meet the needs required by residents at Hillview Post Acute and Rehabilitation Center, such as Lois M. Rack.  The Schwartz Defendants also were aware that the biggest expenditure in their operating budget was staffing the facility.  The Schwartz Defendants sought and kept staffing at or below minimum levels, knowing that this staffing strategy would result in injury to residents at Hillview Post Acute and Rehabilitation Center, including Lois M. Rack.

154.    The foregoing breaches of duties of ordinary care owed by the Schwartz Defendants, in a natural and continuous sequence, were each a proximate cause of the

injuries incurred by Lois M. Rack at Hillview Post Acute and Rehabilitation Center, and without which, the injuries alleged herein would not have occurred.

155.   A reasonable nursing home, operating under the same or similar circumstances as Hillview Post Acute and Rehabilitation Center, would not have breached the above-described duties of care.  It was reasonably foreseeable that the injuries described herein, would result from the breaches of duties of care set out above.

156.   Due to the injuries proximately caused by the Schwartz Defendants, Plaintiff is entitled to be compensated by an amount of money which will reasonably and fairly compensate her for damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future, necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future; pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future; and disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries.  The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which the Plaintiff is determined to be entitled by law.

157.   In addition to compensatory damages for the actual losses that Lois M. Rack has sustained, Plaintiff also is entitled to recover punitive damages for the grossly negligent conduct of the Schwartz Defendants.  Plaintiff alleges that the Schwartz Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which Hillview Post Acute and Rehabilitation Center

was operated, would naturally and probably result in injury to residents, such as Lois M. Rack, and yet the Schwartz Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

### III.   Cause of action for medical malpractice negligence and failures in professional standards of care imposed on a long-term care facility.

158.   Wrongful conduct by the Schwartz Defendants, their agents and employees, also included acts or omissions constituting professional medical or nursing negligence, pursuant to the Actions for Medical Injury Act, Arkansas Code sections 16-114-201 *et seq.*, to the extent the above-described injuries incurred by Lois M. Rack included "medical injuries," as defined by that Act.

159.   Each of the Schwartz Defendants was either a "medical care provider" or was vicariously liable for the conduct of a "medical care provider," as defined by the Act, Arkansas Code section 16-114-201(2), in relevant part, as a nurse, nursing home, or an officer, employee or agent thereof acting in the course and scope of employment in the providing of such medical care or medical services.

160.   In diagnosing the condition of and treating a patient through the provision of services requiring the judgment, skills and/or training of licensed medical or nursing personnel, a nursing home has a professional duty to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of the same profession in good standing, engaged in the same skilled nursing home practice in the locality in which the nursing home practices or in a similar locality.

161.   While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and follow orders to use pressure relieving devices to prevent or relieve skin breakdown and

pressure ulcers, as well as failing to professionally monitor their use.

162.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and prevent or treat infections, including aspiration pneumonia.

163.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and prevent or treat feeding tube care and hygiene.

164.    While Lois M. Rack resided at Hillview Post Acute Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and prevent or treat tracheostomy care and aspiration precautions.

165.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and prevent or treat new skin breakdown.

166.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and prevent, treat or manage pain.

167.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to timely assess, care plan, document and notify Lois M. Rack's physician and family about substantial changes in her condition and mental status.

168.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation Center, the Schwartz Defendants failed to follow ordered safety measures.

169.    While Lois M. Rack resided at Hillview Post Acute and Rehabilitation

Center, the Schwartz Defendants maintained inadequate nursing records and were incomplete in documenting nursing care.

170.   The foregoing breaches of duties of profession medical and nursing standards of care owed by the Schwartz Defendants, in a natural and continuous sequence, were each a proximate cause of the injuries incurred by Lois M. Rack at Hillview Post Acute and Rehabilitation Center, and without which breaches of care her injuries would not have occurred.

171.   A nursing home, in good standing and engaged in the practice of skilled long-term care in the same or a similar locality, would not have breached the above-described duties of professional medical or nursing care.  It was reasonably foreseeable that the injuries described herein would result from the breaches of duties of professional care set out above.

172.   Due to the injuries proximately caused by the professional medical and nursing negligence of the Schwartz Defendants, Plaintiff is entitled to be compensated by an amount of money, which will reasonably and fairly compensate for her damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future; necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future, pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future, disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries.  The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for

federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

173.    In addition to compensatory damages for the actual losses that Lois M. Rack sustained, Plaintiff also is entitled to recover punitive damages for the professional medical and nursing negligence of the Schwartz Defendants.  Plaintiff alleges that the Schwartz Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which Hillview Post Acute and Rehabilitation Center was operated would naturally and probably result in injury to residents, such as Lois M. Rack.  Yet, the Schwartz Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

**IV.    Cause of action against Defendants for violations of the Adult and Long-Term Care Facility Resident Maltreatment Act, Arkansas Code Sections 12-12-1701, et seq.**

174.    At all times pertinent hereto, there was in full force and effect Ark. Code Ann. § 12-12-1701, et seq.  "Adult and Long-Term Care Facility Resident Maltreatment Act," which sets forth civil penalties, administrative penalties and other consequences for the neglect, abuse and/or exploitation of an endangered or impaired person; or the failure to report that an endangered person or impaired person has been subjected to conditions or circumstances that constitute adult maltreatment.

175.    The "Adult and Long-Term Care Facility Resident Maltreatment Act" expresses the fundamental public policy of the State of Arkansas that vulnerable adults are to be protected from exploitation, abuse and neglect, particularly in health care facilities or by persons holding themselves out as trained professionals, and that if such

maltreatment is known or reasonably suspected, and the caregiver(s) fail to report such maltreatment, then such conduct is actionable.

176.     The legislative "Purpose" of the "Adult and Long-Term Care Facility Resident Maltreatment Act" is stated as follows:

(1) Provide a system for the reporting of known or suspected adult and long-term care facility resident maltreatment;

(2) Ensure the screening, safety assessment, and prompt investigation of reports of known or suspected adult and long-term care facility resident maltreatment;

(3) Provide for a civil action, if appropriate, to protect maltreated adults and long-term care facility residents; and

(4) Encourage the cooperation of state law enforcement officials, courts, and state agencies in the investigation and assessment of maltreated adults and long-term care facility residents, and prosecution of offenders.

177.     At all times pertinent hereto, Lois M. Rack was an "impaired person," "endangered person" and "maltreated adult" as those terms are defined by Ark. Code Ann. § 12-12-1703, thus Lois M. Rack fell within the class of persons Ark. Code Ann. § 12-12-1703 was intended to protect, thus entitling Plaintiff to seek civil damages under the "Adult and Long-Term Care Facility Resident Maltreatment Act," and to adopt the Act as the standard of care for measuring Defendants' conduct.

178.     At all times pertinent hereto, the Schwartz Defendants were each Lois M. Rack's "caregivers" as defined by Ark. Code Ann. § 12-12-1703, and thus had statutory duties to Lois M. Rack under the "Adult and Long-Term Care Facility Resident Maltreatment Act."

179.    Additionally, Ark. Code Ann. § 12-12-1703 is directed, at least in part, to obviate the specific kind of harm which Lois M. Rack sustained, as discussed herein.

180.    In addition to the aforesaid negligence, which said negligence is specifically incorporated herein, the Schwartz Defendants, in accepting the responsibility for caring for Lois M. Rack as aforesaid, were negligent "per se" and violated Ark. Code Ann. § 12-12-1703 in that they had reasonable cause to suspect that Lois M. Rack was the victim of abuse, neglect and/or exploitation and failed to report said abuse, neglect and/or exploitation to the appropriate agency and/or law enforcement officials in violation of the law and in breach of their statutory duties.

181.    In addition to the aforesaid negligence, which said negligence is specifically incorporated herein, the Schwartz Defendants, in accepting the responsibility for caring for Lois M. Rack as aforesaid, were negligent "per se," violated Ark. Code Ann. § 12-12-1703, and neglected Lois M. Rack by (i) Negligently failing to provide necessary treatment, rehabilitation, care, food, clothing, shelter, supervision, or medical services to an endangered person or an impaired person; (ii) Negligently failing to report health problems or changes in health problems or changes in the health condition of an endangered person or an impaired person to the appropriate medical personnel; (iii) Negligently failing to carry out a treatment plan developed or implemented by the facility; and/or (iv) Negligently failing to provide goods or services to a long-term care facility resident necessary to avoid physical harm, mental anguish, or mental illness.

182.    In addition to the aforesaid negligence, which said negligence is specifically incorporated herein, the Schwartz Defendants were negligent "per se," violated Ark. Code Ann. § 12-12-1703, and abused Lois M. Rack by subjecting him to (i) an intentional and

unnecessary physical act that inflicts pain on or causes injury; (ii) an intentional act that a reasonable person would believe subjects an endangered person or an impaired person, regardless of age, ability to comprehend, or disability, to ridicule or psychological injury in a manner likely to provoke fear or alarm; (iii) an intentional threat that a reasonable person would find credible and nonfrivolous to inflict pain on or cause injury to an endangered person or an impaired person except in the course of medical treatment or for justifiable cause; and/or (iv) a willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain, or mental anguish.

183.    As a direct result of the aforesaid negligence, negligence "per se" and statutory violations of the Schwartz Defendants, Lois M. Rack was caused to sustain serious personal injuries and damages as aforesaid.

184.    The wrongdoing of the Schwartz Defendants was gross, intentional, outrageous, willful and wanton, and exhibited a reckless and/or conscious indifference to the health and well-being of Lois M. Rack.

185.    The conduct of the Schwartz Defendants was such that an award of punitive damages is justified.

**V.      Cause of action for violations of resident's rights, pursuant to the Protection Of Long-Term Care Facility Residents Act, Arkansas Code sections 20-10-1201.**

186.    The alter-ego of the Schwartz Defendants, the non-party licensee of Hillview Post Acute and Rehabilitation Center had statutorily-mandated duties to provide Lois M. Rack with basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Arkansas Code sections 20-10-1201 *et seq.*

187.    The Protection of Long-Term Care Facility Residents Act mandates the

development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, such as Lois M. Rack.

188.    The Protection of Long-Term Care Facility Residents Act mandates that every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

189.    The statutory duty imposed upon the licensee of Hillview Post Acute and Rehabilitation Center to prevent deprivation or infringement of the resident's rights of Lois M. Rack was non-delegable.   Thus, the Schwartz Defendants, as alter-egos of the licensee, are directly liable to Plaintiff for any deprivation and infringement of Lois M. Rack's resident's rights occurring as a result of their own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of Lois M. Rack's resident's rights caused by the Schwartz Defendants' policies, procedures, whether written or unwritten, and common practices.

190.    Any person or entity acting as an employee or agent of Hillview Post Acute and Rehabilitation Center assumed and undertook to perform the licensee's non-delegable and statutorily-mandated duty to provide and protect Lois M. Rack's nursing home resident's rights as set forth in Arkansas Code sections 20-10-1201 *et seq.* in the operation and management of Hillview Post Acute and Rehabilitation Center.

191.    Notwithstanding the responsibility of the licensee(s) to protect and provide

for these statutorily-mandated, nursing home resident's rights, the Schwartz Defendants infringed upon, and Lois M. Rack was deprived of, rights mandated by Arkansas Code sections 20-10-1201 *et seq.* including, but not limited to, the following:

a) The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Lois M. Rack with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

   1) The right to receive adequate and appropriate custodial service, defined as care for Lois M. Rack which entailed observation of diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

   2) The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Lois M. Rack or her designee or legal representative, which included a comprehensive assessment of the needs of Lois M. Rack, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b) The right to regular, consultative, and emergency services of physicians;

c) The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d) The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Lois M. Rack, and not directly furnished by the licensee(s);

e) The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f) The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g) The right to be free from mental and physical abuse, and from physical and

chemical restraints;

h)    The right of Lois M. Rack to have privacy of her body in treatment and in caring for her personal needs;

i)    The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j)    The right to participate in social, religious, and community activities;

k)    The right to the obligation of the facility to keep full records of the admissions and discharges of Lois M. Rack, and her medical and general health status, including:

        1)    medical records;

        2)    personal and social history; and

        3)    individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

        4)    making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; and

l)    The right to be treated courteously, fairly, and with the fullest measure of dignity.

192.    The above infringement and deprivation of the rights of Lois M. Rack were the result of the Schwartz Defendants failing to do that which a reasonably careful person would do under similar circumstances.

193.    As a result of the aforementioned violations, Plaintiff, pursuant to Arkansas Code section 20-10-1209(a)(4), is entitled to recover actual damages against the alter egos of the licensee(s) of the Facility, the Schwartz Defendants.  Plaintiff asserts a claim for judgment for actual damages against the Schwartz Defendants, including, but not limited to, medical expenses, extreme pain and suffering, otherwise unnecessary

hospitalizations, disfigurement, disability, degradation, emotional distress, and unnecessary loss of personal dignity, in an amount to be determined by the jury and exceeding that required for jurisdiction by the Court and in excess of the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is entitled by law.

194.   The infringement or deprivation of the resident's rights of Lois M. Rack by the Schwartz Defendants was willful, wanton, gross, flagrant, reckless, or consciously indifferent.   Pursuant to Arkansas Code section 20-10-1209(c), Plaintiff is entitled to recover punitive damages against the licensee(s) of Hillview Post Acute and Rehabilitation Center.

### VI.   Breach of fiduciary duty.

195.   Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were more fully set forth at length herein.

196.   At all times material hereto, Lois M. Rack was incapable of dealing with the Schwartz Defendants on equal terms, and was incapable of engaging in any arm's length relationships with them.

197.   In addition, at all times material to this action, Lois M. Rack was incapable of independently providing her own necessary care and services to attain and maintain her highest practicable physical, mental, and psycho-social well-being.

198.   At all times material to this action, the Schwartz Defendants individually, collectively, voluntarily, and in exchange for payment, fostered and forged a relationship of special confidence and trust with Lois M. Rack.

199.   The Schwartz Defendants accepted the special confidence and trust placed

48

upon them by Lois M. Rack by admitting her into the Facility and by reserving the right to specifically determine the level of care, protection, supplies and services that would be provided to Lois M. Rack.

200.    At all times material to this action, the Schwartz Defendants individually and collectively controlled, oversaw and orchestrated every single aspect of Lois M. Rack's existence, from the mundane (such as the clothing she wore) to the vital (such as determining when and how she would receive healthcare, as well as how much food and water she could consume).

201.    As a result, Lois M. Rack was solely and specifically dependent upon the Schwartz Defendants' employees, officers, directors, and agents to provide for her basic daily care, protection, services, supplies, and personal and intimate needs.

202.    the Schwartz Defendants developed a special relationship with Lois M. Rack by virtue of the nature of the care and services required, the supposedly superior knowledge, skill and abilities, and the enormous disparity of power and unequal bargaining position that the Schwartz Defendants enjoyed over Lois M. Rack, and by virtue of Lois M. Rack's inability to care for, provide for, defend and/or protect himself and her own interests.

203.    In their special relationship with one another, Lois M. Rack did not deal with the Schwartz Defendants on equal terms, due to their overmastering dominance on the one hand, and due to Lois M. Rack's relative weakness, dependence and justifiable trust on the other hand.

204.    In addition, the Schwartz Defendants entered into a special relationship with Lois M. Rack due to their voluntary assumption of an overmastering and domineering role

over the destiny of Lois M. Rack's well-being, who was at all times a vulnerable individual requiring significant care and assistance.

205.   This special relationship enabled the Schwartz Defendants to occupy a position of confidence toward Lois M. Rack, which required fidelity, loyalty, good faith, and fair dealing on the part of the Schwartz Defendants.

206.   At all times material to this action, the Schwartz Defendants were fiduciaries of Lois M. Rack.

207.   At all times material to this action, the Schwartz Defendants owed fiduciary duties to Lois M. Rack.

208.   The Schwartz Defendants breached and violated their relationship of trust, special confidence, and their fiduciary obligations and duties owed to Lois M. Rack by:

  a. engaging in the conduct set forth in detail within the previous Counts, above; and,

  b. allowing the use of revenues and assets obtained from the Facility's residents and their payor sources for inflated, unreasonable and improper inter-company fees and transfers designed and created for the personal benefit of the Schwartz Defendants, instead of utilizing said resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Lois M. Rack, as required.

209.   In their dealings with Lois M. Rack, as stated herein, the Schwartz Defendants acted in bad faith and used their position of trust and special confidence to Lois M. Rack's detriment and to their own advantage.

210.   In violating their fiduciary obligations and duties to Lois M. Rack, as referenced herein, the Schwartz Defendants knew, or should have known, that Lois M. Rack would suffer harm.

211.   The conduct of the Schwartz Defendants was intentional, outrageous, willful

and wanton and exhibited a reckless indifference to their fiduciary duties related to Lois M. Rack.

212.    The conduct of the Schwartz Defendants was such that an award of punitive damages is justified.

213.    Due to the injuries proximately caused by the Schwartz Defendants' breaches of fiduciary duties, Plaintiff is entitled to be compensated by an amount of money, which will reasonably and fairly compensate for her damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future; necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future, pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future, disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries.  The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

214.    In addition to compensatory damages, Plaintiff also is entitled to recover punitive damages for the Schwartz Defendants' breaches of fiduciary duties.  Plaintiff alleges that the Schwartz Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct would naturally and probably result in injury to residents, such as Lois M. Rack.  Yet, the Schwartz Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which

malice may be inferred.

## CAUSE OF ACTION AGAINST CONSPIRING DEFENDANTS

**VII.    Aiding and abetting breach of fiduciary duty.**

215.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were more fully set forth at length herein.

216.    Defendants CIBC and Woodland Hills HC Property Holdings, LLC each had knowledge of Lois M. Rack's fiduciary relationship with the Schwartz Defendants by virtue of the nature of the care and services required, the supposedly superior knowledge, skill and abilities, and the enormous disparity of power and unequal bargaining position that the Schwartz Defendants enjoyed over Lois M. Rack.

217.    Defendants CIBC and Woodland Hills HC Property Holdings, LLC each knowingly participated and provided substantial assistance and encouragement to the Schwartz Defendants in connection with their breach of fiduciary duties to Lois M. Rack, as set forth in detail within Count Six, above.

218.    Defendants CIBC and Woodland Hills HC Property Holdings, LLC each knew that the residents at the Facility, including Lois M. Rack, were incapable of independently providing their own necessary care and were solely and specifically dependent upon the Schwartz Defendants' employees, officers, directors, and agents to provide for their basic daily care, protection, services, supplies, and personal and intimate needs.

219.    In addition to this knowledge, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each aided and abetted the Schwartz Defendants in their breaches of fiduciary duties and rendered substantial assistance and encouragement for

the same, by, among other things:

    a.  engaging in the conduct set forth in detail above;

    b.  facilitating the Schwartz Defendants acquisition of the Facility despite their knowledge and awareness of the Schwartz Defendants' inability to safely operate same;

    c.  continuing to extend and/or re-extending the Operator Loan on a revolving basis to the Schwartz Defendants, nominally through the Skyline Enterprise;

    d.  facilitating the Schwartz Defendants ongoing operations of the Facility out of a desire to continue collecting a "cut" of the ill-gotten gains reaped therefrom;

    e.  concealing the Schwartz Defendants' inability to safely and responsibly operate the Facility, despite their knowledge and awareness of same;

    f.  forbearing from taking action on the repeated defaults by the Schwartz Defendants out of a desire to continue profiting from their fraudulent operations of the Facility and to further profit from the increased payments due as a result of the defaults;  and,

    g.  influencing, advocating, and approving the Facility's improper payments to Defendants CIBC and Woodland Hills HC Property Holdings, LLC, which they knew or should have known exceeded amounts a prudent and cost conscious buyer would pay, and which they also knew or should have known would cause the monies intended for the provision of care and services to the residents, including Lois M. Rack, to be depleted.

220.   The conduct of Defendants CIBC and Woodland Hills HC Property Holdings, LLC, as aforesaid, constitutes aiding and abetting the Schwartz Defendants' breach of fiduciary duty and subjects the Conspiring Defendants to liability for the harm suffered by Lois M. Rack.

221.   In aiding and abetting the Schwartz Defendants in violating their fiduciary obligations and duties to Lois M. Rack, as referenced herein, Defendants CIBC and

Woodland Hills HC Property Holdings, LLC each knew, or should have known, that Lois M. Rack would suffer harm.

222.   As a result of the Conspiring Defendants aiding and abetting in the breaches of fiduciary duties by the Schwartz Defendants, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each were improperly and unjustly enriched, the Facility was left without the necessary resources to function in the residents' best interests, and Lois M. Rack suffered both the injuries set forth herein as well as economic harm.

223.   The conduct of Defendants CIBC and Woodland Hills HC Property Holdings, LLC was intentional, outrageous, willful and wanton and exhibited a reckless indifference to the foreseeable harm that would come to Lois M. Rack by inducing breaches of the Schwartz Defendants' fiduciary duties to Lois M. Rack.

224.   The conduct of Defendants CIBC and Woodland Hills HC Property Holdings, LLC was such that an award of punitive damages is justified.

225.   Due to the injuries proximately caused by the aforesaid conduct of Defendants CIBC and Woodland Hills HC Property Holdings, LLC, Plaintiff is entitled to be compensated by an amount of money, which will reasonably and fairly compensate for her damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future; necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future, pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future, disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries.  The amount of compensation, to be determined by a jury, should

exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

226.    In addition to compensatory damages, Plaintiff also is entitled to recover punitive damages for Defendant CIBC's and Woodland Hills HC Property Holdings, LLC's aforesaid conduct.   Plaintiff alleges that Defendants CIBC and Woodland Hills HC Property Holdings, LLC each knew, or ought to have known, in the light of the surrounding circumstances, that their conduct would naturally and probably result in injury to residents, such as Lois M. Rack.  Yet, Defendants CIBC and Woodland Hills HC Property Holdings, LLC each continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

**VIII.    Cause of action for civil conspiracy.**

227.    Defendants CIBC and Woodland Hills HC Property Holdings, LLC are also liable for a conspiracy promoting wrongful conduct in a manner that caused injury to Lois M. Rack.

228.    The Schwartz Defendants and Defendants CIBC and Woodland Hills HC Property Holdings, LLC had actual agreements regarding the sale of the Facility, the terms of the sale, the terms of the loans, and the amount of funds to be used in operating the Facility.

229.    Defendants CIBC and Woodland Hills HC Property Holdings, LLC actively monitored deficiencies in care at the Facility, as cited by the State of Arkansas in surveys, and were aware during the residence of Lois M. Rack that the operating funds being expended at the Facility were not sufficient to meet the needs of the residents.

230.   Defendants CIBC and Woodland Hills HC Property Holdings, LLC each performed a part so that their acts, although apparently independent, were in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment.

231.   Additionally, Defendants CIBC and Woodland Hills HC Property Holdings, LLC are each liable for conspiracy to the extent any act or declaration was made by another of the Defendants in furtherance of the conspiracy.

232.   The Schwartz Defendants engaged in a conspiracy with Defendants CIBC and Woodland Hills HC Property Holdings, LLC to obtain financing for the purchase and lease of the Facility, in order to profit from the lease and fees, knowing that adequate operating funds would not be provided to meet the needs of residents such as Lois M. Rack.

233.   The Schwartz Defendants engaged in a conspiracy with Defendant CIBC to obtain financing for the continued operations of the Facility with the mutual understanding that Medicare, Medicaid, and private insurance monies collected by the Facility would be fraudulently funneled away from the operations and provision of care and up to the Schwartz Defendants and Defendant CIBC.

234.   Defendants CIBC and Woodland Hills HC Property Holdings, LLC were on notice as early as the middle of 2017—months before Lois M. Rack's residency began— that the Skyline Defendants were in default in the Owner and Operator Loans, and otherwise financially incapable of operating the Facility responsibly.

235.   It may be inferred from Defendant CIBC's and Woodland Hills HC Property Holdings, LLC's actions that, knowing the risks and dangers such conduct posed to

residents such as Lois M. Rack, they were aware that the Schwartz Defendants were pursuing a course of conduct to divert funds intended to be used for patient care and services and, instead, funneled that money into corporate profits, including to Defendant CIBC. Yet, Defendants CIBC and Woodland Hills HC Property Holdings, LLC concealed these facts to further their own personal financial gain from the same funneling of monies.

236.   Due to the injuries proximately caused by the tortious acts done in furtherance of a conspiracy between the Schwartz Defendants and Defendants CIBC and Woodland Hills HC Property Holdings, LLC, Plaintiff is entitled to be compensated by an amount of money, which will reasonably and fairly compensate for her damages and which includes, but is not limited to, compensation for serious physical and emotional injuries experienced in the past and reasonably certain to be experienced in the future; necessary medical care, treatment and services incurred in the past and reasonably certain to be experienced in the future, pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future, disfigurement, disability, degradation, loss of personal dignity, and other results of Lois M. Rack's injuries.  The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

237.   In addition to compensatory damages, Plaintiff also is entitled to recover punitive damages for the civil conspiracy on the part of Defendants CIBC and Woodland Hills HC Property Holdings, LLC.  Plaintiff alleges that Defendants CIBC and Woodland Hills HC Property Holdings, LLC each knew, or ought to have known, in the light of the

surrounding circumstances, that their conspiracy with the Schwartz Defendants would naturally and probably result in injury to residents, such as Lois M. Rack. Yet, Defendants CIBC and Woodland Hills HC Property Holdings, LLC continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

### DEMAND FOR JURY TRIAL

238.    Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Robert E. Rack, as Special Administrator for the Estate of Lois M. Rack, deceased, and on behalf of the wrongful death beneficiaries of Lois M. Rack, prays for judgment against Defendants as follows:

1.    For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained.

2.    For all general and special damages caused by the alleged conduct of Defendants.

3.    For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Lois M. Rack and to deter Defendants and others from repeating such atrocities.

4.    For all other relief to which Plaintiff is entitled.

Respectfully submitted,

Robert E. Rack, as Special Administrator for the
Estate of Lois M. Rack, deceased, and on behalf
of the wrongful death beneficiaries of Lois M.
Rack

/s/ *James L. Wilkes, II*

By: _____

James L. Wilkes, II (AR98180)
Wilkes & McHugh, P.A.
1 North Dale Mabry Highway, Suite 700
Tampa, Florida 33609
Telephone: (813) 873-0026
Facsimile: (813) 286-8820
james@wilkesmchugh.com

Robert H. Edwards (AR99010)
THE EDWARDS LAW FIRM, PLLC
711 West Third Street
Little Rock, AR 72201
bob@bobedwardslaw.com

Jeff R. Priebe (AR 2001124)
JEFF PRIEBE LAW FIRM
P.O. Box 7481
Little Rock, AR 72217
jeff@jeffpriebelawfirm.com


*Attorneys for Plaintiff*